**Ricky Francis ASCHER, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C9–94–1061.

Court of Appeals of Minnesota.

Jan. 31, 1995.

Review Denied March 21, 1995.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Asst. Atty. Gen., St. Paul, for appellant.

Faison T. Sessoms, Jr., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and HUSPENI and FOLEY,* JJ.

## OPINION

HUSPENI, Judge.

Respondent Ricky Francis Ascher's license, conditional on his total abstinence from alcohol and controlled substances, was revoked on the grounds that he refused a test at a sobriety checkpoint and cancelled and denied on the grounds that he was inimical to public safety. After this court held the checkpoint unconstitutional, respondent sought reinstatement of his license. Appellant Commissioner of Public Safety upheld the cancellation and denial on "inimical to public safety" grounds. Respondent then petitioned successfully for reinstatement in the district court, which rescinded the cancellation and denial. Because we hold that the exclusionary rule does not preclude an administrative agency from considering evidence of alcohol consumption obtained at a checkpoint subsequently found unconstitutional, we reverse.

## FACTS

Following alcohol-related driving incidents in 1985, 1987 and 1989, respondent's driver's license was revoked and his driving privileges cancelled and denied on the grounds that he was "inimical to public safety." His license was reinstated in 1990 on the condition that he abstain entirely from alcohol and controlled substances.

In 1992, respondent was stopped at a sobriety checkpoint and refused to take a test. He was notified that his license was revoked as of August 22, 1992. Under "reason for withdrawal," the notice read "Refuse to Test"; it also read "Withdrawal of all privileges effective on above date and to continue for 1 year. Cancelled and Denied [pursuant to Minn.Stat. §] 171.04(8)."

Pursuant to Minn.Stat. § 169.123, subd. 5c, respondent sought judicial review of the implied consent revocation on the grounds that the checkpoint was unconstitutional. In January 1993, the district court upheld the revocation. This court and subsequently the Minnesota Supreme Court determined that the checkpoint had been unconstitutional; this court rescinded the revocation and the supreme court affirmed. *See Ascher v. Commissioner of Pub. Safety*, 505 N.W.2d 362 (Minn.App.1993), *aff'd*, 519 N.W.2d 183 (Minn.1994).

Following this court's decision, respondent sought reinstatement of his driver's license. Citing Minn.Stat. §§ 171.14 and 171.04(8), appellant again cancelled the license and denied reinstatement because of respondent's "continuing alcohol involvement" and his failure of a preliminary breath test. On review, the district court rescinded the cancellation and denial on the grounds that evidence obtained from an unconstitutional checkpoint should be excluded, that appellant's reliance on that evidence was unreasonable, and that respondent had not been provided with sufficient notice.

## ISSUES

1. Is this litigation barred by res judicata?

2. Does the exclusionary rule prohibit using evidence obtained at an unconstitutional sobriety checkpoint to cancel and deny respondent's license on the grounds that he is inimical to public safety?

3. Is respondent entitled to reinstatement because the notice of cancellation was legally insufficient?

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

4. Does the clean hands doctrine prohibit cancellation of respondent's license?

## ANALYSIS

### 1. Is this litigation barred by res judicata?[1]

 Respondent argues that since both actions he brought had as their factual basis his DWI arrest and as their objective the rescission of the revocation of his license, the second action is the same as the first. We disagree.

 We review the applicability of res judicata de novo. *Hennepin County v. Hanneman,* 472 N.W.2d 149, 152 (Minn.App. 1991), *pet. for rev. denied* (Minn. Aug. 29, 1991). The criteria for res judicata are a final judgment on the merits, a second suit involving the same cause of action, and parties who are either identical or in privity. *Myers through Myers v. Price,* 463 N.W.2d 773, 776 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 4, 1991). It is undisputed that the first and third criteria are met.

Respondent brought the first action, however, under Minn.Stat. § 169.123, subd. 5c, pertaining exclusively to judicial review of implied consent proceedings, and the second action under Minn.Stat. § 171.19, pertaining to judicial review of all license revocations "except where the license is revoked under section 169.123." Since the statutes are mutually exclusive, a cause of action under one does not encompass a cause of action under the other.

Moreover, the range of issues that can be litigated at an implied consent hearing is extremely limited.

The scope of the hearing [in an implied consent case] shall be limited to the issues of:

(1) whether the peace officer had probable cause to believe the person was driving, operating, or in physical control of (i) a motor vehicle while under the influence of alcohol or a controlling substance * * * and whether the person was lawfully placed under arrest for violation of section 169.121 or 169.1211, * * * or the person refused to take a screening test provided for by section 169.21, subdivision 6, or the screening test was administered and recorded an alcohol concentration of 0.10 or more; and

(2) whether at the time of the request for the test the peace officer informed the person of the person's rights and the consequences of taking or refusing the test * * *; and

(3) either (a) whether the person refused to permit the test or (b) whether a test was taken and the test results indicated an alcohol concentration of 0.10 or more * * *.

Minn.Stat. § 169.123, subd. 6 (1992). None of these issues is before us on review, and none of the issues before us is within the scope of an implied consent hearing. Therefore, this litigation is not barred by res judicata.

### 2. Does the exclusionary rule prohibit using evidence obtained at a checkpoint subsequently found illegal to cancel and deny respondent's license because he violated the total abstinence condition?

 This court has determined, and the supreme court has affirmed, that in implied consent proceedings the exclusionary rule applies to evidence obtained from an unconstitutional checkpoint. *Ascher v. Commissioner of Pub. Safety,* 505 N.W.2d 362 (Minn.App. 1993), *aff'd,* 519 N.W.2d 183 (Minn.1994). However, the hearing on whether respondent's license should be cancelled and denied because "the commissioner has good cause to believe that the operation of a motor vehicle

---

1. Respondent explains that he did not assert res judicata at the district court hearing on the Minn.Stat. § 171.04, subd. 1(8) revocation because the Minnesota Supreme Court had not yet issued its final judgment on the merits of the implied consent (Minn.Stat. § 169.123) revocation. Since respondent brought this action before the district court, however, he would have been unlikely to argue at any time that it was barred by res judicata. Respondent does not explain or cite any authority for the view that a cause of action not barred by res judicata before the district court can be so barred on appeal. We nevertheless address this issue as a threshold matter.

on the highways by [respondent] would be inimical to public safety" pursuant to Minn. Stat. § 171.04, subd. 1(8) was not an implied consent hearing.[2] The hearing leading to license cancellation and denial was held under Minn.Stat. § 171.19 (1992), providing that:

> [a]ny person whose driver's license has been refused, revoked, suspended or cancelled by the commissioner, *except where the license is revoked under section 169.123,* may file a petition for a hearing in the matter in the district court * * *.

(Emphasis added.)

The Supreme Court has limited the application of the exclusionary rule,[3] and Minnesota has followed its example. *Tucker v. Pahkala,* 268 N.W.2d 728 (Minn.1978) refused to exclude a blood sample taken from an unconscious victim on the grounds that by extending the application of the exclusionary rule, "concededly relevant and reliable evidence would be rendered unavailable." *Id.* at 730 (quoting *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976)). This court cited *Janis* for the proposition that "[t]he primary purpose, if not the sole purpose, of the exclusionary rule is to deter future unlawful police conduct." *Minnesota State Patrol Troopers Assoc. v. State Dep't of Pub. Safety,* 437 N.W.2d 670, 676 (Minn.App.1989), *pet. for rev. denied* (Minn. May 24, 1989). We hold that unlawful police conduct in establishing illegal checkpoints has been adequately deterred by the two previous appellate court *Ascher* decisions, and that applying the exclusionary rule

to exclude evidence that respondent, having violated a condition of his licensure by consuming alcohol, is "inimical to public safety" would not deter future unlawful police conduct to any significant degree.

■ Respondent was in effect on probation in regard to his driver's license: he was entitled to hold it only so long as he refrained from the consumption of alcohol. Probation has been revoked because the exclusionary rule was held not to apply to evidence seized in a warrantless search by a probation officer. *State v. Earnest,* 293 N.W.2d 365 (Minn.1980). Four justices concurred in the view that applying the exclusionary rule would interfere with the functioning of the probation system, rather than deter unlawful police conduct. *Id.* at 372. Analogously, reinstating respondent's license, although he is known to have consumed alcohol, would interfere with the public interest of keeping intoxicated drivers off the road rather than deter unlawful police conduct.

### 3. Was the notice cancelling respondent's license legally insufficient?

■ The trial court apparently concluded that the notice telling respondent his license was cancelled was insufficient because it did not say why respondent was "inimical to public safety." Arguably, respondent's failure of the preliminary sobriety test, when he knew his license was contingent on his total abstinence from alcohol, would have given him constructive notice as to why he was deemed inimical to public safety. Moreover,

---

2. The case cited by the trial court to support its decision, *Negaard v. Commissioner of Pub. Safety,* 500 N.W.2d 148 (Minn.App.1993), was an implied consent case where evidence obtained after an officer entered a motor home without a warrant, observed signs of intoxication, and arrested the occupant for driving while intoxicated pursuant to Minn.Stat. § 169.123, subd. 4 (1990), was excluded.

3. *See, e.g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule does not apply to questions based on illegally-seized evidence posed to a witness before a grand jury); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule does not apply in civil proceeding to recover unpaid taxes in the absence of any proof of federal participation in illegality);

*Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (exclusionary rule does not apply in habeas corpus proceeding where there has been a full hearing on the habeas corpus claims in the underlying criminal trial); *I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (exclusionary rule does not apply to deportation proceedings); *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (exclusionary rule does not apply in a criminal proceeding to evidence seized in "good faith" reliance on a search warrant subsequently found to be defective); *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (exclusionary rule does not apply in criminal proceedings to evidence obtained by officers relying on a statute which is later held unconstitutional).

even when insufficient notice rises to the level of a Fourth Amendment violation, it does not ipso facto mandate rescission of a license revocation. *See, e.g., Kohner v. Commissioner of Pub. Safety,* 483 N.W.2d 515 (Minn.App.1992) (reversing and remanding on the grounds of insufficient notice where the licensee was not provided with information on the review process for the cancellation of her license for medical reasons, but not reinstating the license).

### 4. Does the "clean hands" doctrine preclude appellant from seeking cancellation of respondent's license?

Appellant asks this court to uphold the cancellation and denial of respondent's driver's license because there is good cause to believe respondent violated the total abstinence from alcohol on which his license was permanently contingent. Respondent invokes the "clean hands" doctrine to argue that because appellant's agents used an illegal checkpoint to produce the evidence that led to respondent's arrest, appellant is precluded from seeking the rescission of respondent's license. However, appellant cites no authority for the view that the rescission[4] of a driver's license is equitable relief. The clean hands doctrine is irrelevant here.

### DECISION

The purpose of the exclusionary rule, deterring unlawful police conduct, would not be served by reinstating a driver's license where there is good cause to believe the licensee consumed alcohol in violation of the total abstinence condition on the license. We reverse the trial court's reinstatement of respondent's license.

**Reversed.**

---

4. Rescission in the context of drivers' license revocations is a term of art. The term as respondent uses it in making his clean hands argument is defined as

[a]n action of an equitable nature in which a party seeks to be relieved of his obligations under a contract on the grounds of mutual mistake, fraud, impossibility, etc.
Black's Law Dictionary 1174–75 (5th ed. 1979).